Case: 1:21-mj-00266
Assigned to: Judge Harvey, G. Michael
Assign Date: 2/25/2021
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, Tyler N. Freeman, is a Special Agent with the Federal Bureau of Investigation (FBI), Washington Field Office. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

U.S. Capitol Police secure the U.S. Capitol 24 hours a day. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage that appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations

of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Following the January 6, 2021 attack on the Capitol, your affiant received and reviewed a large volume of tips submitted by members of the public. On January 16, 2021, your affiant received a tip from J.D. claiming that his/her relative, T.D., had received text messages from T.D.'s brother—later identified as William Robert NORWOOD III (NORWOOD)—in which NORWOOD claimed to have assaulted federal officers on January 6, 2021. Your affiant then directed FBI special agents in South Carolina to interview J.D.

On January 19, 2021, FBI special agents interviewed J.D., who informed the agents that J.D. was at dinner with T.D. when T.D. began sharing how T.D.'s brother had claimed to do "terrible things" inside the U.S. Capitol, including assaulting law enforcement officers.

Later that day, FBI special agents conducted a follow-up interview with T.D. T.D. provided a telephone number for NORWOOD: 864-237-4868. T.D. also presented the interviewing agents with multiple text messages, which the agents then photographed and provided to your affiant for review.





*Photo 1*             *Photo 2*             *Photo 3*

As depicted in these text messages, on January 7, 2021 at 9:08 a.m., NORWOOD—saved as "Robbie" in T.D.'s phone—tells a group text message thread: "It worked... I got away with things that others were shot or arrested for." (*Photo 2*). Later, at approximately 9:12 a.m., NORWOOD tells the group: "The cop shot a female Trump supporter. Then allowed 'ANTIFA Trump supporters' to assault him. I was one of them. I was there. I took his shit." (*Photo 3*). NORWOOD then sends a "selfie" photo of himself wearing what appears to be a U.S. Capitol Police tactical vest underneath a zipped up camouflage jacket. (*Photo 3*).

Later on in the text message thread, NORWOOD tells the group: "I fought 4 cops, they did nothing. When I put my red hat on, they pepper balled me." (*Photos 4 & 5*). A couple messages

later, NORWOOD tells the group, "I got a nice helmet and body armor off a cop for God's sake and I disarmed him. Tell me how that works." (*Photo 6*).

  

| *Photo 4* | *Photo 5* | *Photo 6* |

In the text thread, T.D., whose text messages appear in blue, attempts to reprimand NORWOOD for his conduct, stating "You admitted to going and being something you're accusing other people of being. And then got mad and blamed others for the same thing you did. What the actual fuck is wrong with you?" (*Photo 8*). Eventually, NORWOOD responds, "The one cop who deserved it, got it," and "The cops who acted shitty got exactly what they deserved . . . The ones who were cool, got help." (*Photo 9*).

  

| *Photo 7* | *Photo 8* | *Photo 9* |

Based on your affiant's training and experience, the image of the vest worn by NORWOOD in Photos 3 and 4 is consistent with the vests worn by U.S. Capitol Police on January 6, 2021.

On January 22, 2021, NORWOOD agreed to participate in a non-custodial interview at the FBI's Greenville Resident Agency. During the interview, NORWOOD told agents that he traveled with his wife to Washington, D.C. on January 6, 2021, to attend President Trump's rally. NORWOOD stated that as he approached the Capitol, he witnessed law enforcement attempting to clear the crowd with explosive and chemical devices. NORWOOD said that he then continued into the crowd and eventually became separated from his wife. NORWOOD also claimed that, at one point, he was close enough to law enforcement to be sprayed in the face with a chemical irritant.

NORWOOD then admitted to entering the U.S. Capitol, including, at one point, the Capitol Rotunda. NORWOOD claimed that two U.S. Capitol Police Officers were waving people inside, and that one of the Capitol Police officers told him, "I'm on your side." NORWOOD further claimed that after entering the U.S. Capitol building, he wanted to leave but could not because of the crowd. At different points in the interview, NORWOOD claimed to have helped protect multiple officers from being assaulted, including by forming a human chain to protect certain officers.

NORWOOD alleged that after leaving the U.S. Capitol building, an unknown person took a police vest from a pile of police equipment that was lying on the ground outside the west side of the Capitol building and put it on NORWOOD. NORWOOD then admitted that he put on a police helmet from the pile of equipment before walking away from the Capitol and reuniting with his wife. NORWOOD's description of how he acquired the vest and helmet is consistent with U.S. Capitol Police officers' accounts of how their equipment was stolen by rioters on January 6, 2021.

Finally, NORWOOD claimed that upon leaving the Capitol grounds, he and his wife met an older couple from Ohio, who invited them to stay in their hotel room at the Hampton Inn for the night. NORWOOD claimed that he left the police vest and helmet inside the hotel room, but he could not provide interviewing agents with any further details about the hotel. NORWOOD also denied assaulting law enforcement officers, and claimed that any statements he made in text messages were meant to make NORWOOD sound tough. NORWOOD repeatedly claimed that he only attempted to help law enforcement, not hurt them.

After the interview, NORWOOD provided the interviewing agents with a photo of himself taken during the political rally at the Ellipse, near the Washington Monument. In the photo, NORWOOD is wearing a camouflage jacket, similar to the one that is partially visible in Photos 3 and 4.



*Photo 10*

On February 25, 2021, your affiant reviewed surveillance footage of an individual resembling NORWOOD inside the Rotunda of the U.S. Capitol building at approximately 2:46 p.m. EST. The individual appears to be wearing the same camouflage jacket and red hat that NORWOOD is seen wearing in Photo 10.





Your affiant has also reviewed surveillance footage of an individual exiting the Capitol Rotunda at approximately 2:48 p.m. EST that resembles NORWOOD. Again, the individual appears to be wearing the same camouflage jacket and red hat as NORWOOD is seen wearing in Photo 10.



   

One of the FBI agents who personally interviewed NORWOOD on January 22, 2021 has also reviewed the surveillance footage and has confirmed to your affiant that the individual in the surveillance footage appears to be NORWOOD.

Finally, according to records obtained through a search warrant which was served on Verizon, on January 6, 2021, in and around the time of the incident, the cellphone associated with the phone number 864-237-4868 was identified as having utilized a cell site consistent with providing service to a geographic area that includes the interior of the U.S. Capitol building.

Based on the foregoing, your affiant submits that there is probable cause to believe that WILLIAM ROBERT NORWOOD III violated 18 U.S.C. §§ 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of

Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that WILLIAM ROBERT NORWOOD III violated 40 U.S.C. §§ 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Your affiant submits there is also probable cause to believe that WILLIAM ROBERT NORWOOD III violated 18 U.S.C. §§ 1512(c)(2) and (2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so.  Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Finally, your affiant submits there is probable cause to believe that WILLIAM ROBERT NORWOOD III violated 18 U.S.C. § 641, which makes it a crime for a person to embezzle, steal, purloin, or knowingly convert to his use or the use of another, or without authority, sell, convey or dispose of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or receive, conceal, or retain the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

Tyler N. Freeman
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 25th day of February, 2021.

G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE